IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 10 2021

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LANIA BOONE | Criminal Information<br><br>No. 1:21-CR-438 |

THE UNITED STATES ATTORNEY CHARGES THAT:

### COUNT 1
*(Conspiracy)*

Beginning on a date unknown, but at least from in or about September 2020 until on or about January 22, 2021, in the Northern District of Georgia, defendant LANIA BOONE knowingly and willfully combined, conspired, confederated, agreed, and had a tacit understanding with persons known and unknown to commit an offense against the United States; to wit, to embezzle, steal, obtain by fraud, and otherwise without authority knowingly convert to the use of any person other than the rightful owner and intentionally misapply property that is valued at least at $5,000, which was under the care, custody, and control of an organization, government, and agency that receives, in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, while being an agent of such organization, government, and agency, in violation of Title 18, United States Code, Section 666(a)(1)(A).

## Background

At all times relevant to this Information:

1. On March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act into law in response to the economic fallout of the COVID-19 pandemic in the United States. It was a part of the CARES Act that Federal relief funds ("Relief Funds") were disbursed directly to Americans, Federal agencies, and state and local governments.

2. In April 2020, the Federal government disbursed to DeKalb County approximately $125 million in Relief Funds to assist county citizens who were impacted by COVID-19. The Federal government permitted DeKalb County to further disburse the Relief Funds to municipalities in DeKalb County. Accordingly, on or about July 14, 2020, the DeKalb County Board of Commissioners voted to give a portion of the county's Relief Funds to several of its municipalities, including approximately $6.2 million to the City of Stonecrest.

3. On or about August 10, 2020, DeKalb County executed an intergovernmental contract with the City of Stonecrest for the approximately $6.2 million grant of Relief Funds. In general, the contract required the City of Stonecrest to spend the Relief Funds in accordance with CARES Act guidance from the United States Department of the Treasury, which included a requirement that Relief Funds could "only be used to cover costs that – [were] necessary expenditures incurred due to the public health emergency . . . . and were incurred during the period that [began] on March 1, 2020, and [ended] on

December 30, 2020." Further guidance from the Treasury Department clarified the permissible use of Relief Funds, including, for example:

    a. Expenditures were incurred "due to" the coronavirus pandemic if they were "used for actions taken to respond to the public health emergency," which included "second-order effects . . . such as providing economic support to those suffering from employment or business interruptions due to COVID-19-related business closures."

    b. Examples of eligible expenditures of Relief Funds included, "[m]edical expenses," "[p]ublic health expenses," "[p]ayroll expenses for public safety, public health, health care, human services, and similar employees . . . substantially dedicated to mitigating or responding to the COVID-19 public health emergency," and "grants to small businesses to reimburse the costs of business interruption caused by required closures."

    c. By contrast, examples of ineligible expenditures of Relief Funds included, "[r]eimbursement . . . for donated items or services," and "[w]orkforce bonuses other than hazard pay or overtime."

4. The City of Stonecrest received the Relief Funds between August and November 2020. As a result, the City of Stonecrest received Federal assistance in excess of $10,000 during calendar year 2020.

5. The City of Stonecrest did not directly distribute all the Relief Funds. Rather, it contracted with a private company called Municipal Resource Partners Corporation, Inc. ("MRPC") to disburse most of the Relief Funds. In particular, in the November 6, 2020 contract, MRPC agreed to: (a) open bank accounts to

3

receive the Relief Funds, (b) provide an accounting of Relief Funds received and disbursed, and (c) disburse the Relief Funds at the direction of the City of Stonecrest. The contract was signed by the City of Stonecrest's Deputy City Manager and MRPC's CEO. As a result, the City of Stonecrest retained control over the Relief Funds.

6. The CEO of MRPC retained defendant LANIA BOONE to oversee the receipt and disbursement of the Relief Funds as required in the contract. As a result, on or about October 15, 2020, the CEO of MRPC and BOONE jointly opened two accounts at Bank of America in MRPC's name, including an account ending in 5252 (the "5252 Account"). On or about November 18, 2020, BOONE, opened two more accounts at Bank of America in MRPC's name, including an account ending in 4047 (the "4047 Account"). BOONE had access and control to the 4047 Account, including its online banking features.

7. The CEO of MRPC retained BOONE at the recommendation of Jason Lary, an agent of the City of Stonecrest; to wit, the Mayor.

8. Between November and December 2020, a total of $6 million of Relief Funds were transferred from the City of Stonecrest to the 5252 Account. Those Relief Funds were subsequently transferred among MRPC's four bank accounts, including the 4047 Account opened by BOONE.

9. From in or about November 2020 through February 2021, millions of dollars of Relief Funds were disbursed by MRPC to businesses, churches, non-profit organizations, and individuals, mostly by checks signed by BOONE.

BOONE wrote the Relief Funds checks at the direction of Lary and others authorized by Lary to disburse Relief Funds.

10. Many of the businesses that received Relief Funds from MPRC were later asked to contribute a portion of their Relief Funds to third parties, including to one company called Visit Us, Inc. ("Visit Us"). Visit Us was controlled by Lary. Hundreds of thousands of dollars of Relief Funds were given to Visit Us under false pretenses and deposited into a bank account at Bank of America.

## Manner and Means

11. The manner and means by which the conspiracy to commit federal program theft was sought to be accomplished included the following:

    a. Lary used his authority as an agent of the City of Stonecrest to retain MRPC to disburse approximately $6 million of Relief Funds and, further, used his relationship with the CEO of MRPC to provide BOONE with access and control over the Relief Funds.

    b. Instead of disbursing all the Relief Funds for authorized expenditures, Lary and BOONE conspired for BOONE to steal a portion of the Relief Funds in the custody of MRPC for Lary's benefit; to wit, to pay off the mortgage on Lary's lakefront home. Lary in turn directed a payment of Visit Us funds to pay for Boone's child's college expenses.

## Overt Acts

12. In furtherance of the conspiracy to commit federal program theft, BOONE and Lary committed at least the following overt acts in the Northern District of Georgia:

a. On or about December 22, 2020, Lary called a mortgage servicing and originating company "Servicing Company A," to request instructions for a pay-off of an existing mortgage on a lakefront home owned by Lary. The same day, Lary was in email and telephone contact with BOONE.

b. On or about January 12, 2021, Lary called Servicing Company A to again request pay-off instructions. This time, Lary asked for the pay-off instructions to be emailed to Lary and to BOONE's Gmail account. The same day, Lary was in email and telephone contact with BOONE.

c. On or about the same day, two checks were written on Visit Us' bank account at Lary's direction. The first check was payable to a university in the amount of $5,657.47. The check's memo line stated the payment was for BOONE's child's "Meal Plan, Tuition & Books." The second check was payable to a private individual in the amount of $2,000.00. The check's memo line stated the payment was for BOONE's child's "Rent (2/2021-5/2021)."

d. On or about January 21, 2021, BOONE's Gmail account received an email from Servicing Company A that attached a pay-off statement for Lary's lakefront home. The pay-off statement listed the total price to extinguish the mortgage as $108,137.48 plus an additional $18.04 in interest per day if the funds were received on or after January 22, 2021.

e. On or about January 22, ,2021, BOONE initiated a wire transfer in the amount of $108,155.52 from the 4047 Account, which were Relief Funds, to a bank account held by Servicing Company A. BOONE added the instruction "PAYOFF EDGEWATER DRIVE" to the wire transfer, which is the street name

6

of the home owned by Lary. BOONE understood and intended that the wire transfer would extinguish the mortgage on the home for Lary's benefit. All in violation of Title 18, United States Code, Section 371.

## FORFEITURE PROVISIONS

13. Upon conviction of the crime charged in Count One of the Criminal Information, defendant LANIA BOONE, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real or personal, constituting and derived from proceeds traceable to the offense, including but not limited to the following:

MONEY JUDGMENT: A sum of money in United States currency equal to the amount of proceeds the defendant obtained as a result of the offense for which the defendant is convicted.

14. If, as a result of any act or omission of defendant, any property subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek

forfeiture of any other property of the defendant up to the value of the forfeitable property.

KURT R. ERSKINE
  *Acting United States Attorney*

*/s/ Trevor Wilmot*
TREVOR C. WILMOT
  *Assistant United States Attorney*
Georgia Bar No. 936961
600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181